UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| MICHAEL K., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1467-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Michael K. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 12. Plaintiff also filed a reply brief. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for DIB on September 21, 2017, alleging disability beginning January 2, 2017 (the disability onset date). Transcript ("Tr.") 35, 184-85. Plaintiff's claim was denied initially on January 18, 2018, after which he requested an administrative hearing. Tr. 35. On August 1, 2019, Administrative Law Judge Bryce Baird (the "ALJ") conducted a hearing in Buffalo, New York. Tr. 35, 61-102. Plaintiff appeared and testified

at the hearing and was represented by Richard G. Abbott, an attorney. Tr. 35. Jay Steinbrenner, an

impartial vocational expert ("VE"), also appeared and testified. Tr. 35.

       The ALJ issued an unfavorable decision on August 27, 2019, finding that Plaintiff was not

disabled. Tr. 35-46. On August 19, 2020, the Appeals Council denied Plaintiff's request for further

review. Tr. 1-6. The ALJ's August 27, 2019 decision thus became the "final decision" of the

Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

       "In reviewing a final decision of the SSA, this Court is limited to determining whether the

SSA's conclusions were supported by substantial evidence in the record and were based on a

correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive"

if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."

*Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

       An ALJ must follow a five-step sequential evaluation to determine whether a claimant is

disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his August 27, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since January 2, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: tinnitus and intervertrabal [*sic*] disc syndrome (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except he can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit for up to 6 hours in an 8-hour day; can stand or walk up to 6 hours in an 8-hour day; can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, and crouch but can never crawl; can never be exposed to excessive heat, excessive vibration, or hazards, such as unprotected heights or moving machinery; is limited to a moderate noise environment; can never be exposed to bright or flashing lights; and will be off-task up to 10 percent of the workday, in addition to regularly scheduled breaks..

6. The claimant is capable of performing past relevant work as a veterans claim representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 2, 2017, through the date of this decision (20 CFR 404.1520(f)).

Tr. 35-46.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits filed on September 21, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 46.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ failed to properly evaluate opinions from Department of Veterans Affairs ("VA") vocational rehabilitation counselor Vincent Pellegrino ("Mr. Pellegrino"), VA physician Sherry Withiam-Leitch, M.D. ("Dr. Withiam-Leitch"), and VA family nurse practitioner Kara Good ("Ms. Good"). *See* ECF No. 9-1 at 1, 12-21. Plaintiff further argues that the ALJ's failure to properly evaluate these opinions was compounded by his failure to rely on substantial evidence, including Plaintiff's subjective complaints, to support the ALJ's "highly specific RFC determination." *See id*. at 21-23.

In response, the Commissioner argues that the ALJ fairly and reasonably weighed the evidence, including the reports submitted by Mr. Pellegrino, Dr. Withiam-Leitch, and Ms. Good, as well as the objective medical record and Plaintiff's subjective complaints, and substantial evidence supports the ALJ's finding that, while Plaintiff had some limitations, they did not rise to a level that would preclude all work. *See* ECF No. 12-1 at 11-26.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ's decision was supported by substantial evidence, including the opinion of a consultative examiner that Plaintiff had mild physical limitations for prolonged activities and the prior administrative medical findings of a state agency medical consultant that Plaintiff's impairments were nonsevere, as well as the objective medical evidence, Plaintiff's treatment history, and his wide range of daily activities. Accordingly, the ALJ

properly concluded that Plaintiff retained the RFC to perform a range of light work with the noted limitations, and, therefore, he was not disabled.

Plaintiff argues that the ALJ failed to properly evaluate the opinions of VA providers Mr. Pelligrino, Dr. Withiam-Leitch, and Ms. Good, and therefore, the ALJ's RFC finding was not supported by substantial evidence. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claim on September 21, 2017, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also*

42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC assessment. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ's decision reflects that he properly evaluated the totality of the relevant record evidence and exercised his discretion in resolving the evidentiary conflicts in the record to reach a well-supported RFC determination. The ALJ acknowledged that Plaintiff would experience functional limitations (Tr. 39-44); however, there was more than substantial evidence to support the finding that these difficulties were not totally disabling.

Plaintiff first argues that the ALJ erred by failing to consider the "Counseling Record Narrative Report" provided by VA vocational rehabilitation counselor Mr. Pellegrino (Tr. 892-95). *See* ECF No. 9-1 at 17-19. According to Plaintiff, the ALJ should have considered Mr. Pellegrino's report because it contained supporting evidence underlying the employability decision, "as evidenced by his statement that some unknown factor would cause Plaintiff to miss work." *See* ECF No. 9-1 at 17 (citing Tr. 895). Plaintiff's argument is unavailing. As a vocational counselor, Mr. Pellegrino is a nonmedical source and is not qualified to give an opinion on

Plaintiff's physical limitations. *See* 20 C.F.R. § 404.1502(d) ("Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law"); *see also* 20 C.F.R. § 404.1502(e) (listing examples of nonmedical sources).

Because Mr. Pellegrino is a nonmedical source report and his report is not a medical opinion, the ALJ was not required to articulate how he considered Mr. Pellegrino's opinion on Plaintiff's functioning. *See* 20 C.F.R. § 404.1520c(d). Likewise, the ALJ was not required to articulate how he considered Mr. Pellegrino's opinion that Plaintiff "was not capable of achieving suitable employment." Tr. 895; 20 C.F.R. § 404.1520b(c)(3)(i) (statements that a claimant is or is not disabled are inherently neither valuable nor persuasive and an ALJ is not required to discuss such statements).

Plaintiff also argues that further development of the record was necessary because it appears that three pages of Mr. Pellegrino's report were missing, and, according to Plaintiff, these pages may include Mr. Pellegrino's opinions of Plaintiff's physical functioning. *See* ECF No. 9-1 at 18-19. However, the ALJ had no responsibility to obtain/develop Plaintiff's nonmedical records, as Plaintiff argues, and was not required to articulate how he considered Mr. Pellegrino's nonmedical opinion on Plaintiff's functioning. *See* 20 C.F.R. § 404.1512(b) (instead under "Our responsibility," the regulations state: "We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports."); *see also* 20 C.F.R. § 404.1520c(d).

As previously explained, Mr. Pellegrino is not a medical source, and his report is not a medical opinion. Moreover, even while the three pages might be missing, there are over 100 pages

from Mr. Pellegrino (Tr. 815-921), more than enough for the ALJ to understand how Mr. Pellegrino's evidence may have supported the VA's decision on Plaintiff's employability. *See* 20 C.F.R. § 404.1504 ("we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim"). In any event, any statements made by Mr. Pellegrino were made in the context of assessing Plaintiff's eligibility for VA benefits, and therefore, are inherently neither valuable nor persuasive for establishing Plaintiff's eligibility for SSA disability benefits. *See* 20 C.F.R. § 416.920b(c)(1)-(3) (2017).

Plaintiff also objects to the ALJ's consideration of VA physician Dr. Witham-Leitch's functional assessments. *See* ECF No. 9-1 at 19-20. In April 2017 and April 2018, Dr. Witham-Leitch reviewed Plaintiff's medical history, examined him, and filled out a "Back (Thoracolumbar Spine) Conditions Disability Benefits Questionnaire." Tr. 482-92, 781-89. In both reports, Dr. Witham-Leitch opined that Plaintiff could lift and carry up to 10 pounds; could walk 100 feet with a cane; could travel one flight of stairs with a cane; and could not bend, run, stoop, or crawl. Tr. 491, 789.  In the 2018 report, Dr. Witham-Leitch also limited Plaintiff to sitting for up to one hour. Tr. 789.

The ALJ considered Dr. Witham-Leitch's opinions on Plaintiff's functional limitations, and reasonably found them to be not persuasive. Tr. 42, 44. In part, the ALJ found Dr. Witham-Leitch's opinions unpersuasive because they were "merely a recitation of the claimant's subjective complaints at the time." Tr. 44. Plaintiff argues that there is no evidence to support the ALJ's conclusion (*see* ECF 9-1 at 19), but upon review, the Court finds that ALJ's conclusion was reasonably supported by the evidence.  The functional assessments in each of Dr. Witham-Leitch's reports exactly mirrors Plaintiff's own description of his functional limitations. The reports show that Dr. Witham-Leitch wrote the exact same thing in the section for her to render

her own opinion on Plaintiff's functioning as written in the section for Plaintiff's to describe his limitations in his own words *Compare* Tr. 484, 783 *with* Tr. 491, 789. Thus, the reports on their face show that Dr. Witham-Leitch's assessments were merely a recitation of Plaintiff's subjective complaints at the time, just as the ALJ found. *See* Tr. 44.

In addition, the ALJ properly considered the extent to which Dr. Witham-Leitch's opined limitations were supported by her objective findings and were consistent with the other evidence of record. Tr. 44; 20 C.F.R. § 404.1520c(b)(2), (c)(1), (c)(2). In considering supportability, and contrary to Plaintiff's contention that the ALJ only relied on facts supporting his RFC (*see* ECF No. 9-1 at 19), the ALJ noted that Dr. Witham-Leitch made many positive findings, including reduced range of motion in the spine, spasm, abnormal gait, reduced muscle strength, decreased sensation, reduced reflexes, and moderate radiculopathy. Tr. 42, 44, 484-90, 783-88. While the ALJ acknowledged that these positive findings might support Dr. Witham-Leitch's functional assessments, he also reasonably concluded that the functional assessments were not persuasive because they were not consistent with the other evidence of record. Tr. 42, 44.

As explained above, RFC is an administrative finding, not a medical one. Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56. Moreover, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC

finding that is consistent with the record. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

Here, the ALJ noted that while examination findings from the remainder of the record sometimes showed reduced range of motion in the spine (Tr. 546, 557, 686, 697); use of a cane (Tr. 390, 397, 402, 407, 418, 578, 685, 746, 769, 930); and abnormal gait (Tr. 397, 402, 420, 685), at other times Plaintiff walked/could walk independently (Tr. 546, 611, 685) and had normal gait (Tr. 387, 546, 558, 739, 753, 792, 801, 930). Tr. 41-44. Furthermore, these examinations showed that, despite his impairments, Plaintiff was alert and fully oriented (Tr. 387, 390, 396, 419, 546, 557, 578, 611, 738, 753, 792, 800, 930) and in no acute distress (Tr. 390, 396, 402, 546, 557, 611, 685, 738, 792, 798); with intact cranial nerves (Tr. 387, 419, 546, 558, 753, 801); cerebellar function within normal limits (Tr. 419); ability to walk on heels and toes with, at most, only mild difficulty (Tr. 685, 793); ability to squat 95% of full (Tr. 685); generally no lumbar tenderness (Tr. 390, 546, 557, 793), with one finding of spasm (Tr. 397); negative straight leg raise testing (Tr. 390, 546, 557, 611, 686, 793), once found positive (Tr. 397); normal muscle bulk and/or no muscle atrophy (Tr. 387, 686, 801); normal muscle tone (Tr. 387, 611, 739, 793, 801); normal power (Tr. 387, 801); normal coordination/balance (Tr. 387, 753, 801); normal sensation (Tr. 387, 686, 753, 801); generally full 5/5 strength (Tr. 611, 686, 739, 793), occasionally with mild antalgic lower extremity weakness due to pain (Tr. 387, 801); symmetric reflexes (Tr. 387, 390, 397, 420, 611, 686, 698, 753, 801); and neurological status grossly intact (Tr. 390, 396, 611, 739, 793). Tr. 41-44.

Similarly, diagnostic testing was relatively benign, with lumbosacral spine x-ray showing only mild degenerative disc disease (Tr. 436-37); normal hearing tests (Tr. 930); MRI study of the brain showing no significant abnormalities (Tr. 434-36); and videonystagmography ("VNG")

testing related to his complaints of dizziness normal (Tr. 416-17). Tr. 41. Moreover, while Plaintiff

recites some of the positive findings in the record as supporting disability (*see* ECF No. 9-1 at 19-

20), where evidence is subject to more than one reasonable interpretation, the ALJ's conclusion

should be affirmed. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is

susceptible to more than one rational interpretation, the Commissioner's conclusion must be

upheld.").

Dr. Withiam-Leitch's opinion was also inconsistent with the opinion of consultative

examiner Hongbiao Liu, M.D. ("Dr. Liu"), whose opinion the ALJ reasonably found to be

persuasive. Tr. 43-44. In December 2017, Dr. Liu took a detailed medical history, performed an

internal medicine examination, and opined that Plaintiff's conditions would result in only mild

limitations in prolonged walking, bending, and kneeling. Tr. 684-87. The ALJ reasonably found

that Dr. Liu's opinion was supported by the nature and degree of his examination findings, which

showed that, while Plaintiff had some positive clinical findings (slowed gait, reduced range of

motion in the lumbar spine, and reported prescription of a cane), Plaintiff appeared to be in no

acute distress; with no medical need for a cane; ability to walk on heels and toes with mild

difficulty; squat 95% of full; ability to change for the examination and get on and off of the

examination table independently; ability to rise from a chair without difficulty; negative straight

leg raise test; full range of motion in his cervical spine, shoulders, elbows, forearms, wrists, hips,

knees, and ankles bilaterally; stable and nontender joints; no muscle atrophy; full 5/5 strength in

his upper and lower extremities; symmetric deep tendon reflexes; intact hand and finger dexterity;

and full 5/5 grip strength. Tr. 41-43, 585-86; *see also* 20 C.F.R. § 404.1520c(c)(1). The ALJ also

found Dr. Liu's opinion to be consistent with the overall examination findings of record, but he

ultimately determined that Plaintiff's subjective complaints suggested limitation to light work with

the further nonexertional limitations contained in the RFC. Tr. 43; *see also* 20 C.F.R. §
404.1520c(b)(2), (c)(2).

Dr. Withiam-Leitch's functional assessment was also inconsistent with the prior
administrative medical findings of state agency medical consultant D. Brauer, M.D. ("Dr. Brauer")
Tr. 105-09. State agency medical consultants, such as Dr. Brauer, are highly qualified experts in
Social Security disability evaluations, and their prior administrative medical findings can be found
to be persuasive where they are supported by the medical evidence of record. 20 C.F.R. §
404.1513a(b)(1); *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (assessment of state agency
physician provided substantial evidence to support ALJ's RFC finding); *see also Amber H. v. Saul*,
2021 WL 2076219, *5 (N.D.N.Y. 2021) (citing *Tamara M. v. Saul*, 2021 WL 1198359, *7
(N.D.N.Y. 2021) (under the new regulations, the opinions of all medical sources, including non-
examining medical consultants, will be held to the same standard of persuasiveness of content)).

In January 2018, Dr. Brauer reviewed the evidence of record at the time, including Dr.
Liu's consultative examination report and records from the VA, and opined that Plaintiff's physical
impairments were nonsevere. *Id*. The ALJ found Dr. Brauer's prior administrative medical finding
persuasive, because it was supported by citations to the evidence, and as the ALJ noted, Dr.
Brauer's findings were consistent with the overall record, including treatment notes indicating that
Plaintiff often had normal strength, reflexes, and sensation; was alert and oriented; was able to
ambulate unassisted; and had no atrophy; as well as Plaintiff's conservative treatment history." Tr.
43-44; 20 C.F.R. § 404.1520c(c)(2). Nevertheless, the ALJ ultimately decided that Plaintiff's
subjective complaints suggested the additional limitations contained in the RFC. Tr. 43; *see also*
20 C.F.R. § 404.1520c(b)(2), (c)(1), (c)(2).

With respect to Plaintiff's treatment history, the ALJ noted that Plaintiff's treatment had
been routine and conservative, with no significant emergency treatment or hospitalization. Tr. 42,

374-930. In addition, the ALJ noted that, at times, Plaintiff reported that his symptoms had improved with aqua therapy and reduction of caffeine. Tr. 42, 736, 758, 867. Plaintiff argues that his treatment with a back brace, gabapentin, ibuprofen, aqua therapy, and physical therapy was "not necessarily conservative treatment." *See* ECF No. 9-1 at 20 (citing *Scognamiglio v. Saul*, 432 F. Supp. 3d 239, 249-250 (E.D.N.Y. 2020) (noting that a claimant's treatment is not conservative merely because it consists of non-surgical treatment such as prescription drugs)). For the reasons explained below, the Court finds *Scognamiglio* distinguishable from the present case.

In *Scognamiglio*, the court found that the plaintiff's epidural steroid injections, physical therapy, and consistent use of prescription opioid pain-management medications rose above the level of conservative treatment. *Scognamiglio*, 432 F. Supp. 3d at 250. The court also noted that the plaintiff had been referred for possible surgical intervention, but ultimately decided against it, at least in part because it could not guarantee relief. *See id*. As the *Scognamiglio* court explained, "this circuit has tended to limit its definition of conservative treatment for claimants with similar symptoms to far more benign treatment regimens." *Scognamiglio*, 432 F. Supp. 3d at 250. Examples of such "benign treatment regimens" included walking, home exercise programs, and stretching; only over-the-counter medications; and physical therapy, hot packs, and EMG testing. *Id*. (citing *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (summary order); *Burgess v. Astrue*, 537 F.3d 117, 134 (2d Cir. 2008); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)). The record here does not indicate that Plaintiff received epidural steroid injections or was prescribed opioid pain-management medications. Nor is there evidence that any provider recommended

surgical intervention. Rather, Plaintiff's treatment with a back brace, gabapentin,[2] ibuprofen,[3] aqua therapy, and physical therapy are more akin to the benign treatment regimens noted above. Accordingly, the Court finds no error in the ALJ's characterization of Plaintiff's treatment as conservative.

The ALJ also noted that Plaintiff had been non-compliant with his headache and vertigo medicines. Tr. 42, 446, 609, 617, 930. *See Walker v. Berryhill*, No. 6:17-CV-06138 (MAT), 2017 WL 6492520, at *3 (W.D.N.Y. Dec. 19, 2017) ("An ALJ may properly take into account a history of noncompliance with medication or treatment recommendations in assessing credibility."). The ALJ recognized Plaintiff's reports that he had not taken these medications due to fear of potential side effects but also properly noted that Plaintiff's "complete refusal to take these medications for most of the period at issue and failure to work with a treating provider to find a different treatment plan if such side effects occur despite multiple prescriptions supports an inference that Plaintiff's subjective symptoms are not as severe as alleged. Tr. 43.

Plaintiff's argument that the ALJ failed to properly consider the opinion VA family nurse practitioner Ms. Good (*see* ECF No. 9-1 at 21) fails for similar reasons. On March 10, 2017, Ms. Good opined that Plaintiff would have one-to-two flare-ups a year for up to 30 days each. Tr. 377. Ms. Good provided her opinion after treating Plaintiff on only one prior occasion, February 21, 2017, for lower back pain and tinnitus, after which she referred Plaintiff to physical therapy, audiology, and ear, nose, and throat consultation. Tr. 376, 555-60. The ALJ reasonably did not find Ms. Good's assessment persuasive because it was inconsistent with the other evidence of

---

[2] Gabapentin is commonly used to treat some types of nerve pain but is classified as an anticonvulsant medicine, not as an opioid or painkiller. Drugs.com, https://www.drugs.com/medical-answers/gabapentin-considered-painkiller-3562719 (last visited Aug. 8, 2022).
[3] Ibuprofen is a nonsteroidal anti-inflammatory drug ("NSAID") used to reduce fever and treat pain or inflammation caused by many conditions such as headache, toothache, back pain, arthritis, menstrual cramps, or minor injury. It is available by prescription, as well as and over the counter under brand names such as Advil, Motrin, Midol, etc. Drugs.com, https://www.drugs.com/ibuprofen.html (last visited Aug. 8, 2022).

record as discussed above, including the objective medical findings, Plaintiff's conservative treatment history, improvement in symptoms with therapy and caffeine reduction, and the opinions of Dr. Liu, who assessed a mild limitation for prolonged walking, bending, and kneeling, and Dr. Brauer, who assessed that Plaintiff's conditions were non-severe. Tr. 44.

Plaintiff's activities of daily living also supported the ALJ's RFC determination. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)). Although Plaintiff alleged having severe difficulty performing daily activities, even needing assistance with bathing and dressing, the ALJ found that the overall record suggested a greater functional ability than alleged. Tr. 43. As the ALJ noted, Plaintiff sought authorization from the VA to purchase a modified bicycle to ride with his family (Tr. 877), and the record contained multiple notations that Plaintiff reported exercising regularly (Tr. 498, 611, 624, 667, 672).

Plaintiff also complains that the ALJ "did not sufficiently articulate a connection between the medical findings, Plaintiff's subjective complaints, and the highly specific [RFC] findings." *See* ECF No. 9-1 at 21-23. Plaintiff inaccurately asserts that the ALJ relied only on the opinions of Drs. Liu and Brauer to support his RFC assessment. *See id.* at 22. However, as discussed above, the ALJ relied on the objective medical evidence and medical opinion evidence of record, as well as the nonmedical evidence of record, including Plaintiff's subjective complaints. Tr. 39-44. Furthermore, the ALJ properly evaluated the intensity and persistence of Plaintiff's subjective symptomatology and alleged limitations and reasonably found they were not entirely consistent

with the objective medical evidence, as well as Plaintiff's reported activities, the duration, frequency, and intensity of his symptoms, and the type of treatment. Tr. 39-44; 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p.

Plaintiff does not specifically contest the ALJ's evaluation of the intensity and persistence of his subjective symptomatology and alleged limitations but merely argues that the limitations included in the RFC do not exactly align with his subjective complaints. *See* ECF No. 9-1 at 22-23. Contrary to Plaintiff's argument, the ALJ's RFC limitations need not exactly mirror Plaintiff's subjective complaints in order to be valid, provided that substantial evidence supports the finding, which is the case here.

Plaintiff complains that "none of the [RFC] limitations regarding Plaintiff's ability to lift, carry, climb, balance, stoop, tolerate environmental factors such as heat, vibration, hazards, noise or lights1, or remain on task . . . were consistent with Plaintiff's subjective complaints." *See* ECF No. 9-1 at 22. However, many of these limitations are specifically noted in the record. For example, Dr. Liu opined that Plaintiff had a mild limitation for prolonged bending and kneeling. Tr. 43, 687. In a functional report included in his application documents, Plaintiff admitted he could sit four to six hours; lift up to 25 to 30 pounds; climb stairs when using a handrail; and kneel. Tr. 306. Dr. Witham-Leitch and Plaintiff both stated that Plaintiff could lift and carry 10 pounds and could never crawl. Tr. 44, 484, 491, 783, 789. Plaintiff also stated that he needed to avoid bright light and high-pitched sounds. Tr. 40, 309. Plaintiff also testified about issues with feeling hot and avoiding driving. Tr. 71, 77, 86-87. Thus, the only RFC restrictions not explicitly mentioned in the record were the limitations related to balancing, stooping, crouching, climbing, being exposed to excessive vibration, and being off task up to 10% of the workday. *See* Tr. 39-40.

However, just because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not mean there was an error. As noted throughout this opinion, "an RFC

finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 47 (2d Cir. 2021). Furthermore, in assessing the RFC, an ALJ does not draw his own conclusions or base the RFC determination on his own lay opinion; instead, he considers "the medical and other relevant evidence in the record in its totality to reach an RFC determination," as the ALJ did here. *Curry*, 855 F. App'x at 48, n.3; *see also Tiffany L.*, No. 1:20-CV- 0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. Jul. 26, 2021) ("an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation").

Plaintiff cites *Cosnyka v. Colvin*, 576 Fed. App'x 43, 46 (2d Cir. 2014), to support his argument that the ALJ based these limitations, including the 10 percent off-task limitation, on his "own surmise." *See* ECF No. 9-1 at 21. However, unlike *Cosnyka*, where nothing in the record supported the ALJ's conclusion and indeed some evidence was "to the contrary," the ALJ in this case properly explained that the objective evidence, Plaintiff's routine and conservative treatment, and his activities of daily living supported his ability to perform the range of light work described in the RFC, including limiting Plaintiff to work in a moderate noise environment without bright or flashing lights and a 10% off-task limitation to accommodate his tinnitus and vertigo episodes. Tr. 41-43. *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range . . . to illustrate [Plaintiff's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence.").

Furthermore, even though no medical source specifically opined that Plaintiff was limited in balancing, crouching, climbing, being exposed to excessive vibration, or being off task, remand is not warranted simply because a limitation in the RFC is more restrictive than any opinion provided by a physician. *See Baker o/b/o Baker v. Berryhill*, 2018 WL 1173782, *2 (W.D.N.Y. 2018) ("[w]here an ALJ makes an RFC assessment that is *more* restrictive than the medical

opinions of record, it is generally not a basis for remand") (emphasis in original); *Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match [the consultative examiner's] opinion, and was in fact more restrictive than that opinion, is not grounds for remand.").

Based on the foregoing, the ALJ properly considered the evidence, including the medical opinions and prior administrative findings, and reasonably concluded that Plaintiff could perform a range of light work. Accordingly, the Court finds no error.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered entire record, including the treatment reports, the medical opinions, and Plaintiff's mostly routine and conservative care, as well as Plaintiff's activities of daily living, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

21

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE